UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ESTATE OF ICOLA B. HUNTER, EDWARD HUNTER, JR., ADMINISTRATOR | CIVIL ACTION |
| VERSUS | NO: 18-9848 |
| WELLS FARGO HOME MORTGAGE | SECTION: "A" (1) |

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 9)** filed by defendant, Wells Fargo Bank, N.A. ("Wells Fargo").[1] Plaintiff, Edward Hunter, Jr., acting pro se, as administrator for the estate of Icola B. Hunter, opposes the motion. The motion, noticed for submission on April 17, 2019, is before the Court on the briefs without oral argument.[2]

Wells Fargo moves to dismiss Plaintiffs' Complaint arguing that Plaintiff has alleged no facts, and provides no relevant information to help Wells Fargo determine

---

[1] Wells Fargo Home Mortgage no longer exists as a separate and independent legal entity, having been merged into Wells Fargo Bank, N.A. in 2004. (Rec. Doc. 9 at 1 n.1).
    The complaint also purports to join a Wells Fargo employee, Ms. Kelly Casey, as a defendant. After reviewing the documents that Plaintiff attached to his opposition, the Court has learned that Ms. Casey's name appears on correspondence that Wells Fargo sent to Plaintiff from the Customer Care and Recovery Group. Giving Plaintiff's complaint the broadest of constructions the Court can discern no legal basis for taking legal action against Ms. Casey.

[2] Plaintiff appeared at the Court's chambers on the noticed submission date of March 20, 2019. No opposition had been filed at that point in time. The Court's staff confirmed with Mr. Hunter that he did wish to file a formal opposition to Wells Fargo's motion. The Court therefore continued the motion to April 17, 2019, on the briefs. (Rec. Doc. 10). Plaintiff filed his opposition and has also requested oral argument.

the basis of the Complaint. The Statement of Claim section of the complaint accuses Wells Fargo of "stealing the United States Government, Social Security Administration money, stealing my [mother's] Social Security check from Liberty Bank Account." (Rec. Doc. 1 at 4). The requested relief sought is "all my mother's financial records and the deed to her house," and payment of all court costs plus damages for disrupting Plaintiff's life. (*Id.*).

The Court agrees with Wells Fargo's assessment of the complaint insofar as it alleges no facts from which either the Court or Wells Fargo can discern the nature of the claim. The Court therefore has perused Mr. Hunter's opposition documents in an attempt to understand why he filed this lawsuit. (Rec. Doc. 11).

Mr. Hunter's mother, Icola B. Hunter, died on May 3, 2018. Mrs. Hunter had been very sick for the last five years leading up to her death, and especially so in the last year and a half of her life. (Rec. Doc. 11-1 at 1). Mrs. Hunter owed money on her house and that indebtedness was secured by a mortgage. Mrs. Hunter had a checking account at Liberty Bank in New Orleans, and it was into this account that she received periodic Social Security payments. It was from this same account that payments were made to Wells Fargo in satisfaction of the monthly house note.[3]

Mr. Hunter states that after his mother's death he asked Liberty Bank whether his mother was current on her house note and the bank confirmed that she was. Mr. Hunter says that he made this inquiry at Liberty Bank because several letters had been

---

[3] The entries on the sampling of bank statements attached to the opposition indicate that the payments to Wells Fargo were "auto pay" but the Court cannot determine whether Mrs. Hunter set up her account to automatically initiate the payments to Wells Fargo or whether Mrs. Hunter had given Wells Fargo permission to draft money directly from her Liberty Bank account.

mailed to his mother's house saying that she was several months behind on her Wells Fargo mortgage payments. Mr. Hunter called Wells Fargo and he says that he received a statement but Wells Fargo did not send him "all of the records to pay the mortgage off."[4] (Rec. Doc. 11 at 3). Mr. Hunter explains that he sent a check to Wells Fargo to try to get the mortgage up to date, and a religious organization also sent a check on his behalf, but Wells Fargo refused to accept the checks and returned them.[5] The reinstatement quote sent to Mr. Hunter on October 30, 2018, indicates that as of that date there were nine delinquent payments totaling $7,845.61. (Rec. Doc. 11-3 at 5). Thus, if Wells Fargo's records are correct, the loan payments were delinquent for several months leading up to Mrs. Hunter's death and then thereafter.

Mr. Hunter's theory is that Wells Fargo did not credit payments to his mother's house loan even though Wells Fargo took the money from her Liberty Bank account. Since the primary source of funding for the account was Social Security payments, Mr. Hunter believes that Wells Fargo is guilty of stealing Social Security funds. Mr. Hunter filed the instant suit in proper person on October 23, 2018. Mr. Hunter wants the house free and clear of all liens, in addition to damages. But to start, Mr. Hunter asks the Court to order Wells Fargo to produce all of his mother's financial records pertaining to the

---

[4] On October 15, 2018, Wells Fargo sent Mr. Hunter a payoff statement for the loan. (Rec. Doc. 11-3 at 7).

[5] On September 10, 2018, Well Fargo informed Mr. Hunter via letter that the payment would not be accepted because it was less than the total amount required to bring the loan into current status. (Rec. Doc. 11-4 at 1; 11-5). By this point in time foreclosure proceedings had already begun. (Rec. Doc. 11-2 at 2, July 12, 2018 letter from Wells Fargo's attorney). The checks sent totaled $7,280.87 but the amount necessary to reinstate the loan, at least as of October 30, 2018, was $12,360.26 (Rec. Doc. 11-3 at 5).

mortgage from January 1, 2013 through June 30, 2018.[6] Mr. Hunter believes that his claims arise under federal law and although he cites to no statutes, he refers to stolen Social Security Administration money, extortion, a mortgage modification scam, and credit reporting fraud.[7] In addition to filing this lawsuit, Mr. Hunter has also complained to the Attorney General of the United States.

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A

---

[6] This request is not limited to Wells Fargo but no other financial institution is a party to this lawsuit.

[7] It is far from clear that Mr. Hunter's claims arise under federal law. To the extent that the claims constitute claims for extortion, fraud, or conversion under state law, the amount in controversy does not appear to exceed $75,000.00. In other words, this Court may very well lack subject matter jurisdiction over Mr. Hunter's claims.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id*. (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id*. (quoting *Iqbal*, 129 S. Ct. at 1950).

It is not clear at what point in time Mr. Hunter believes that Wells Fargo stopped crediting his mother's payments to the outstanding loan. The Court notes that none of the Liberty Bank statements attached to the opposition evince payments to Wells Fargo in the timeframe that the loan is alleged to have been delinquent during 2018. Moreover, the governing loan/mortgage documents are not attached to the opposition. Wells Fargo may very well have been acting within its contractual rights when it refused to accept the checks that Mr. Hunter sent in after foreclosure proceedings had started. The loan amortization sheet from August 1, 1994 does not appear to be a Wells Fargo document. (Rec. Doc. 11-6). Thus, Mrs. Hunter might have refinanced the loan at some point in time, or the original loan might have been subject to an adjustment for changes in the interest rate. The cost of insurance and/or taxes might have increased the payments. Even if the payments had not increased over the years, Mrs. Hunter might have had difficulties paying her bills as she became increasingly ill. The Liberty Bank statements that are attached to the opposition suggest that the account never contained a surfeit of funds and at times it was overdrawn. Mr. Hunter's entire theory seems to be based on unverified statements that someone with Liberty Bank made to him about the status of the Wells Fargo loan. The loan was not with Liberty Bank so it is unclear how

anyone at Liberty Bank would have been able to confirm that Mrs. Hunter's loan with Wells Fargo was current in 2018.

The Court declines to dismiss the case on the grounds asserted because even though Wells Fargo is correct in observing that no facts are alleged, Mr. Hunter is unrepresented. Wells Fargo can reach the same inferences that the Court did about the nature of the claim when reviewing Mr. Hunter's opposition. To be clear, the Court is not suggesting that anything untoward happened with Mrs. Hunter's loan.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 9)** filed by defendant, Wells Fargo Bank, N.A. is **DENIED** based on the specific arguments raised in the motion to dismiss. Now that Wells Fargo and the Court understand more about the nature of Mr. Hunter's claim, Wells Fargo will not be precluded from filing a second motion to dismiss in lieu of answering the complaint. Wells Fargo can move for additional relief within thirty (30) days of entry of this Order.[8]

**IT IS FURTHER ORDERED** that within fifteen (15) days of entry of this Order, Wells Fargo will produce to Mr. Hunter an itemized statement of Mrs. Hunter's loan account with all payment activity from January 1, 2013 through June 30, 2018. Wells Fargo shall provide the Court with a copy of the statement sent to Mr. Hunter. Wells Fargo must produce this information prior to filing a second motion to dismiss or before moving for summary judgment. Liberty Bank is not a party to this lawsuit so the

---

[8] Wells Fargo should remain mindful, however, that the Court cannot dismiss any of Mr. Hunter's claims with prejudice (which would constitute an adjudication on the merits) unless the Court has subject matter jurisdiction. Mr. Hunter should likewise remain mindful that as the party filing this lawsuit in federal court, he has the burden of establishing subject matter jurisdiction.

Court cannot order it to produce statements. Mr. Hunter must contact Liberty Bank directly in order to obtain the statements that he intends to compare to Wells Fargo's statement of payment activity.

April 30, 2019

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE